**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DONALD MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **No. 21-2422-KHV** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability, disability insurance benefits and supplemental security income under Title II, 42 U.S.C. §§ 401–34, and Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381–83d. For reasons stated below, the Court affirms the decision of the Commissioner.

**Procedural History**

On June 13, 2019, plaintiff protectively filed his applications for disability insurance benefits and supplemental security income.[1] He claimed a disability onset date of November 30, 2016. Initially and upon reconsideration, the agency denied plaintiff's applications. In March of 2021, after a hearing at which plaintiff and a vocational expert testified, an administrative law judge ("ALJ") denied his claim. See Transcript of the Administrative Record (Doc. #14-3) filed November 30, 2021 ("Tr.") at 24. The ALJ found that plaintiff was not disabled by November 30,

---

[1] The Social Security Administration explains that "[p]rotective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. See SOCIAL SECURITY DISABILITY RESOURCE CENTER, http://www.ssdrc.com/disabilityquestionsmain20.html (last visited June 10, 2022).

2016, through the date of the ALJ's decision. The Appeals Council denied plaintiff's request for review, making the ALJ decision the final decision reviewable by this Court. 42 U.S.C. § 405(g).

**Factual Background**

The following is a brief summary of the factual record.

On November 30, 2016, the alleged onset date, plaintiff was 33 years old. Tr. 36, 74. Following the alleged onset date, plaintiff worked as a security guard and performed odd jobs around his neighborhood, but his earnings did not qualify as substantially gainful activity.[2] Tr. 15.

From 2002 to 2006, after graduating from high school, plaintiff served as an infantryman in the United States Army before being honorably discharged. Tr. 50. When plaintiff returned home, he had no significant physical impairments. Tr. 40. By December of 2015, plaintiff had completed three years of college and in January of 2021 was one semester away from completing his bachelor's degree. Tr. 319.

Plaintiff alleges that he is disabled because he suffers from post-traumatic stress disorder ("PTSD"), depression, anxiety disorder, chronic insomnia, hypervigilance, impaired impulse control, neglect of personal appearance and hygiene, suspiciousness, unprovoked irritability, substance use disorder, panic disorder and difficulty establishing and maintaining relationships. Tr. 16, 318.

**I.     Relevant Medical Evidence Before The ALJ**

These doctors did not testify, but plaintiff submitted and relied on their medical records.

---

[2] In 2017, plaintiff earned $609.40. Plaintiff earned $3,025 in the fourth quarter of 2018 and $2,295 in the first quarter of 2019. Tr. 15. To be eligible for disability benefits, a person must be unable to engage in substantial gainful activity. 20 C.F.R. § 404.1571. The amount of monthly earnings considered substantially gainful employment depends on the nature of a person's disability. See Substantial Gainful Employment, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/oact/cola/sga.html (last visited June 10, 2022).

A. Dr. Murch

On September 26, 2017, Dr. Kevin Murch, Ph.D., a psychologist, evaluated plaintiff. Tr. 808–14. Plaintiff reported daily depression, intrusive thoughts about military trauma, and weekly panic attacks. Tr. 808. Plaintiff had normal speech and psychomotor behavior; tense/anxious affect; logical and goal-oriented thought processes; grossly intact attention, concentration and memory; and adequate insight and judgment. Tr. 812–13.

During the visit, Dr. Murch assessed the extent to which plaintiff's "service-connected mental health difficulties" may have impacted his ability to function in occupational environments. In doing so, he assigned impairment ratings to 19 different work-related competencies. Dr. Murch opined that plaintiff had no impairment in nine of the competencies and mild impairment in six of the competencies. Dr. Murch found that plaintiff had mild to moderate impairment in the other four competencies: (1) ability to work in proximity to others without being distracted by them; (2) ability to accept instructions and respond appropriately to criticism from supervisors; (3) ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (4) ability to interact appropriately with the general public. Tr. 813–14.

B. State Agency Psychological Consultants[3]

Two state agency psychological consultants, Gretchen Brandhorst, Psy.D., and Tiffany Iskander, Ph.D., reviewed the available record and completed Mental Residual Functional

---

[3] The Social Security Administration defines a psychological consultant as "a member of a team that makes disability determinations in a State agency (see § 404.1615), or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves. The psychological consultant completes the medical portion of the case review and any applicable residual functional capacity assessment about all mental impairment(s) in a claim." See Medical Consultants and Psychological Consultants, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/OP_Home/cfr20/404/404-1616.htm (last visited June 10, 2022).

Capacity ("MRFC") Assessments[4] for plaintiff. Tr. 76–81, 106–110. Both consultants assessed 19 mental function activities, in conjunction with a rating scale, to evaluate how plaintiff's mental disorder limited his functioning in a work setting.[5] Both psychologists found that plaintiff had no significant limitations in seven activities and moderate limitations in 12 activities. Both psychologists agreed that plaintiff was moderately limited in (1) his ability to understand and remember detailed instructions and (2) his ability to maintain attention and concentration for extended periods. Tr. 79–81, 108–11. Dr. Brandhorst summarized her findings by stating that plaintiff should "be limited to simple 1 [to] 2 step instructions in a socially restrictive environment in order to decrease stressors." Tr. 81. Dr. Iskander similarly concluded that plaintiff "would have the ability to sustain 1 [to] 2 step tasks in a supportive environment with minimal interpersonal expectations." Tr. 110.

## II.   Vocational Expert Testimony

At the hearing before the ALJ, a vocational expert testified.[6] To determine whether

---

[4] An MRFC is used to assess how a claimant's illness has impacted his ability to perform various mental work-related activities. The Social Security Administration uses an MRFC form to assess every claim uniformly, using the same criteria and considerations. See Mental Residual Functional Capacity Assessment, SOCIAL SECURITY ADMINISTRATION, https://secure.ssa.gov/poms.nsf/lnx/0424510060 (last visited June 13, 2022).

[5] The four criteria of adult mental disorders, also known as the "paragraph B" criteria, are: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. Tr. 77. The five-point rating scale is none, mild, moderate, marked or extreme limitation. To satisfy the criteria and step three of the five-step evaluation process, plaintiff must have an extreme limitation in one or a marked limitation in two of the four areas of mental functioning. Disability Evaluation Under Social Security, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited June 17, 2022).

[6] A vocational expert is an expert witness who knows about job availability in the current labor market and the skills needed to perform those jobs. At a Social Security disability
   (continued . . .)

plaintiff could perform jobs that existed in the national economy, the ALJ presented three hypotheticals, which included limitations with regard to age, education, past work experience and MRFC.

First, the ALJ asked about work opportunities for a hypothetical individual who had no exertional limitations; who could never climb ladders, ropes or scaffolds; who should avoid concentrated exposure to unprotected heights and hazardous machinery; who can understand, remember and carry out simple instructions; who can perform non-detailed, routine repetitive tasks; who can maintain concentration and attention for two-hour segments over an eight-hour period; who can make simple, work-related decisions; who can perform work without high-production quotas; who can take appropriate precautions to avoid hazards; and who should not have contact with the public and no more than occasional contact with co-workers and supervisors. Tr. 61–62.  The expert testified that this hypothetical individual could not perform plaintiff's past work but could perform three occupations from the Dictionary of Occupational Titles ("DOT"): laundry worker (DOT 361.684-014), tumbler operator (369.685-34) and binder (652.685-014).[7]

The ALJ then asked about a second individual.  This hypothetical individual was the same as the first person but had the added limitations of performing only one to two-step routine,

---

[6] (continued . . .)
adjudication, the expert will provide evidence by answering questions posed by the ALJ and the claimant or the claimant's representative based on hypothetical findings of age, education, work experience and the RFC assessment.  The expert cannot comment on medical matters, such as whether she believes that the medical evidence indicates a certain diagnosis, disability determination or functional limitation.  See Becoming A Vocational Expert, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/appeals/ve.html (last visited June 10, 2022).

[7] The DOT is used in Social Security disability adjudications as the primary source of occupational information to determine whether an individual can perform a position.  See Dictionary of Occupational Titles – Fourth Edition, DEPARTMENT OF LABOR, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last visited June 6, 2022).

repetitive tasks; adapting to only routine or simple work changes where such changes are few and infrequent; and not being an integral part of any team. Tr. 62. The vocational expert testified that this hypothetical individual could perform the occupations of laundry worker and tumbler operator but not a binder. Tr. 62–63.

The ALJ's third hypothetical person was the same as the second person, but with a General Education Development ("GED")[8] reasoning level of one. A GED level one job requires an individual to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Because the three positions previously identified require a GED reasoning level of two, the vocational expert identified three new positions that exist in significant numbers in the national economy which this hypothetical person could perform: meat trimmer (DOT 525.684-054), gambreler (DOT 525.687-030) and cutlet maker (DOT 529.686-022). Tr. 60–63. All three positions also require a Specific Vocational Preparation ("SVP")[9] rating of two, which qualifies as unskilled work.

A meat trimmer (DOT 525.684-054) trims fat, skin, tendons, tissues and ragged edges from

---

[8] The GED Scale is composed of three divisions: reasoning development, mathematical development and language development. "The description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States." See Dictionary of Occupational Titles, Appendix C, DEPARTMENT OF LABOR, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited June 6, 2022).

[9] The Department of Labor assigns an SVP to each job listed in the DOT. The SVP rating indicates the amount of time required for a typical claimant to learn the techniques, acquire the information and develop the facility needed for average performance in a job. Unskilled work, work that requires little to no judgment to do simple duties that a claimant can learn on the job in a short period, is assigned an SVP of one or two. Semi-skilled work is assigned an SVP of three or four, and skilled work is assigned an SVP of five to nine in the DOT. See Program Operations Manual System (POMS), SOCIAL SECURITY ADMINISTRATION, https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last visited June 6, 2022).

various meat cuts using a meat hook and knife. The job requires an individual to trim the meat and fat from bones and place the trimmings and bones into separate containers, trim the fatback from hog bellies and cut bellies into specified shapes using a knife and feed the bacon bellies through rolls to flatten the bellies to a prescribed thickness. A meat trimmer may need to wash or scrape dirt and blood from the meat.

A gambreler (DOT 525.687-030) hangs animal carcasses on an overhead rail predatory. The job requires an individual to slit the skin to expose tendons in hind ankles, to use a knife and insert a gamb stick (hooked metal or wooden rod) between tendon and ankle bone to spread legs. A gambreler will hook the gamb stick to a trolley on the overhead rail and push the carcasses to the next workstation.

A cutlet maker (DOT 529.686-022) feeds a machine that shreds and presses pork into cutlets. The job requires an individual to cut strips of pork into pieces using a knife, dump the cut meat into a feed hopper of a machine that automatically shreds the meat into cutlets and stacks the cutlets on waxed paper dividers. A cutlet maker will weigh and pack the cutlets into a cardboard carton on weighing scales according to work ticket specifications before sealing the cartons using a pneumatic staple gun.

### III.    ALJ's Opinion

The ALJ denied benefits at step five, finding that though plaintiff could not perform any past relevant work, he could perform other kinds of work. In his order on March 8, 2021, the ALJ made the following findings of fact and conclusions of law:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since November 30, 2016, the alleged onset date.

3. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD); anxiety; depression; substance use disorder; and panic disorder.

4. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should never climb ropes, ladders or scaffolds. He should avoid all exposure to unprotected heights and hazardous machinery. The claimant can understand, remember, and carry out at least simple instructions; perform 1 to 2 step routine, repetitive tasks; maintain concentration and attention for 2-hour segments over an 8-hour period; make simple work related decisions; and adapt to simple or routine work changes where such changes are few and infrequent. The claimant can take appropriate precautions to avoid hazards. The claimant can perform work at a normal pace without high-rate production quotas. The claimant should not be an integral part of any team. Any job should have no contact with the public as part of the job and no more than occasional contact with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on October 3, 1983 and was 33 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2016, through the date of this decision.

Tr. 15–24 (citations omitted).

In determining plaintiff's RFC, the ALJ found that plaintiff's impairments could cause limiting symptoms, but that that his subjective statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the record. Tr. 19. In support of this determination, the ALJ discussed how plaintiff felt that his symptoms related to marital distress and how his symptoms improved after engaging in marital and individual therapy. Furthermore, plaintiff reported that his mood stabilized after properly taking his medications. The ALJ also noted that though plaintiff reported that his concentration was sporadic, he generally exhibited good attention and concentration, linear and goal-directed thought processes, good eye contact and no observable memory impairment. Tr. 583, 615.

Though plaintiff also reported feeling depressed and anxious, his mental status assessments were "unremarkable." All assessments reported that plaintiff had logical thought processes, clear speech, intact insight and unremarkable cognition with no suicidal ideation. Tr. 2154, 2158, 2191, 2195. The ALJ also noted that plaintiff's more recent treatment notes stated that he had appropriate grooming, good humor, appropriate dress and cooperative behavior. Tr. 308, 679, 762, 783, 894.

Based on the foregoing, the ALJ found that plaintiff's RFC was as follows: (1) plaintiff should never climb ropes, ladders or scaffolds; (2) he should avoid all exposure to unprotected heights and hazardous machinery; (3) he can understand, remember and carry out at least simple instructions and perform one to two step routine, repetitive tasks; (4) he can maintain concentration and attention for two-hour segments over an eight-hour period; (5) he can make simple work related decisions; (6) he can adapt to simple or routine work changes where such changes are few and infrequent and take appropriate precautions to avoid hazards; (7) he can perform work at a normal pace without high-rate production quotas; and (8) he should have no contact with the public as part of his job, no more than occasional contact with co-workers and not be an integral part of

any team. After considering plaintiff's RFC, age, education and work experience in conjunction with the vocational expert's testimony, the ALJ found that plaintiff could perform the three positions that the third hypothetical individual could perform—meat trimmer, gambreler and cutlet maker—and that those positions exist in significant numbers in the national economy.

## Legal Standard

### I. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's decision is free from legal error and supported by substantial evidence. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052 (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

### II. Disability Determination

Plaintiff bears the burden of proving disability under the SSA. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner applies a five-step sequential evaluation process: (1) whether claimant is currently engaged in substantial

gainful activity; (2) whether claimant suffers from a medically severe impairment or combination of impairments; (3) whether the impairment is equivalent to a condition listed in the appendix of the relevant disability regulation; (4) whether the impairment prevents claimant from performing his past relevant work; and (5) whether the claimant possesses the sufficient RFC to perform other work in the national economy.  Wall, 561 F.3d at 1052 (citations and internal quotation marks omitted); see 42 U.S.C. §§ 404.1520, 416.920.  If claimant satisfies steps one, two and three, he will automatically be considered disabled; if he satisfies steps one and two but not three, he must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to show that the claimant retained the RFC to perform work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

## Analysis

Plaintiff does not challenge the substance of the medical opinions or the ALJ's acceptance of these medical opinions.  Instead, plaintiff asserts that the ALJ erred in formulating his RFC because the ALJ did not properly account for plaintiff's moderate limitations in concentration, persistence and pace.  Plaintiff argues that because the ALJ erred in formulating the RFC, the vocational expert testimony was "defective" and the ALJ improperly concluded that plaintiff could perform work that existed in significant numbers in the national economy.

**I.     ALJ's RFC Formulation**

Plaintiff argues that the RFC was not supported by substantial evidence because the ALJ did not account for plaintiff's concentration deficits.  Plaintiff argues that the ALJ cannot harmonize the finding that plaintiff was moderately limited in concentration, persistence and pace with the finding that plaintiff could maintain concentration for two-hour segments.

At step three of the sequential analysis, the ALJ determines whether plaintiff's impairment

or combination of impairments meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. To satisfy this step, the ALJ evaluates the "paragraph B" criteria and determines whether plaintiff has extreme or marked limitations in a broad area of functioning. Tr. 16. Here, the ALJ did not find extreme or marked limitations but found that plaintiff had a moderate limitation in all four paragraph B criteria, including a moderate limitation in concentration, persistence and pace. Tr. 16–18; 20 C.F.R. Pt. 404, Listing 12.01, paragraph B.

The paragraph B criteria are not the same as an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). An ALJ's finding of a moderate limitation in concentration, persistence and pace at step three does not necessarily translate to a work-related functional limitation for purposes of an RFC assessment. See Vigil v. Colvin, 805 F.3d 1199, 1203 (10th Cir. 2015). The ALJ properly proceeded to the "more detailed" assessment of plaintiff's RFC at step four. The ALJ recognized that plaintiff had some difficulties with concentration, persistence and pace, discussing plaintiff's subjective reports, his avoidance of people and the medical evidence discussing his ongoing treatment for anxiety and depression. Tr. 18–21. But the ALJ also discussed the longitudinal evidence of plaintiff's intact insight, memory, concentration and linear and goal-directed thought processes. Tr. 18–21. Specifically, the ALJ acknowledged plaintiff's ability to watch movies with his family, attend church, jog at night with his wife, help his children with their homework and perform household chores. Tr. 22. The ALJ then established plaintiff's RFC and limited him from working with high-rate production quotas and work that required more than two-hour segments of attention. The RFC acknowledged, though, that plaintiff could "understand, remember and carry out at least simple instructions" and "perform 1 to 2 step routine, repetitive tasks." Tr. 18–21.

To harmonize these findings and account for plaintiff's moderate limitations, the ALJ

limited him to unskilled work. See Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016) (ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity."). In Vigil, the Tenth Circuit held that an ALJ may adequately account for moderate limitations in concentration, persistence and pace by limiting a plaintiff to unskilled work. 805 F.3d at 1204. The Tenth Circuit noted that unskilled work, work with an SVP rating of one or two, is work where concentration is "not critical" and generally requires only one of the following: (1) understanding, remembering and carrying out simple instructions; (2) making simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. Id. (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)). By limiting plaintiff to one to two-step routine, repetitive tasks and work changes where such changes are few and infrequent, the ALJ adequately accounted for plaintiff's limitations. See Kristin I. v. Kijakazi, No. 20-01182-EFM, 2021 WL 4523455, at *3 (D. Kan. Oct. 4, 2021) (limiting plaintiff to unskilled work with repetitive tasks fully accounted for plaintiff's limitations in sustaining concentration and pace).

Plaintiff's opening brief does not discuss Vigil or the ALJ's decision to limit him to unskilled work with a reasoning level of one. To argue that the ALJ erred in formulating the RFC, plaintiff cites one unpublished district court case. See Plaintiff's Brief In Support Of Reversing The Administrative Decision Of Defendant (Doc. #9) filed March 16, 2022 at 24. Plaintiff cites Lucero v. Saul, No. CV 20-518 KK, 2021 WL 2589130 (D.N.M. June 24, 2021), where the ALJ relied on vocational expert testimony when deciding that the claimant could perform the requirements of unskilled, medium-exertion occupations. Id. at *3. Plaintiff's doctor opined that plaintiff's ability to maintain attention and concentration for extended periods was moderately impaired. Id. at *12. Plaintiff argued that the ALJ did not properly reject this medical opinion

because the ALJ said plaintiff could perform work for two-hour intervals. Id. In his decision, the ALJ stated he gave the doctor's opinion "partial weight, to the extent consistent with the record as a whole," but did not discuss how he limited occupations to those of only a certain reasoning level. Id. After finding that the ALJ committed reversible error by failing to adequately discuss the findings of the doctor, the magistrate judge granted plaintiff's motion to reverse and remand for a rehearing.10 Id. at *1.

Lucero is distinguishable. Here, the ALJ specifically discussed the findings of Dr. Brandhorst, Dr. Iskander and Dr. Murch and did not use a bare reference to "the record as a whole." The ALJ discussed how plaintiff's moderate limitations could be addressed by removing work with high-rate production quotas, limiting his interactions with others, eliminating fast-paced work and limiting his concentration periods to two hours, all consistent with jobs requiring a reasoning level of one and an SVP of two. Tr. 21–22. In making these restrictions, the ALJ discussed the medical opinions which explained that plaintiff could perform "simple 1-2 step instructions" with his moderate limitations. Tr. 18, 81, 110. Substantial evidence supports the ALJ's RFC determination that accounted for plaintiff's moderate limitations in concentration, persistence and pace by limiting him to unskilled work requiring only a reasoning level of one. See William Edward S. v. Saul, No. CV 19-1061-JWL, 2020 WL 569806, at *9 (D. Kan. Feb. 5, 2020)

## II.     Vocational Expert Testimony

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony. Specifically, plaintiff argues that the ALJ did not address all of plaintiff's moderate limitations when he posed hypothetical individuals to the expert. Plaintiff claims that as a result, the ALJ

---

10      Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to the magistrate judge conducting dispositive proceedings and ordering the entry of final judgement in this case. Lucero, 2021 WL 2589130, at *1.

improperly interpreted the expert's testimony to mean that plaintiff would be capable of performing three jobs that existed in significant numbers in the national economy: meat trimmer, gambreler and cutlet maker.

To meet his burden at step five, the ALJ relied on a vocational expert to assess whether plaintiff could perform work in the national economy. Tr. 23–24. At the hearing, the ALJ presented the expert with a hypothetical individual with the same vocational profile and functional restrictions as plaintiff. After limiting the hypothetical individual to work opportunities that only required a reasoning level of one, the ALJ asked if the individual could perform work existing in significant numbers in the national economy. Tr. 64–65. The vocational expert answered affirmatively and listed three different jobs meeting that requirement: meat trimmer, gambreler and cutlet maker. Tr. 64–65. The ALJ used this testimony and plaintiff's RFC, age, education and work experience to find that plaintiff could perform these positions and was therefore not disabled. Tr. 18, 23–24.

Plaintiff mainly argues that the three positions conflict with his RFC because they require him to complete more than one to two-step routine, repetitive tasks and will involve high-production quotas. In support of his argument, plaintiff does not cite any case law. He only cites a 2018 news article discussing the meat industry. Plaintiff's Brief In Support Of Reversing The Administrative Decision Of Defendant (Doc. #9) at 27–28.

At the hearing, the vocational expert testified that all three occupations had an SVP level of two and a reasoning level of one. An SVP level of two qualifies as unskilled work. The DOT defines reasoning level one jobs as requiring the ability to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DICOT 525.684-054 (emphasis

added); see also Cooper v. Barnhart, No. 03-CV-0665-J, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) (reasoning level one description closest to ALJ's requirement that plaintiff be limited to simple, repetitive routine and tasks).  The definition of reasoning level one jobs and the three specific DOT jobs the vocational expert testified about do not mention "high-rate production quotas."  See Hackett v. Barnhart, 395 F.3d 1168, 1171, 1176 (10th Cir. 2005) (RFC limiting plaintiff to simple, routine and repetitive work consistent with reasoning level of one or two).

The Tenth Circuit has held that DOT definitions and job descriptions are reliable evidence for determining "the functional demands and job duties" of specific jobs and matching those requirements to a claimant's limitations.  Haddock v. Apfel, 196 F.3d 1084, 1090 (10th Cir. 1999).  The ALJ did not err in considering that evidence here.  Furthermore, the vocational expert testified that though the DOT describes various tasks for each of the three jobs, an individual is not necessarily doing all the tasks but rather doing "one or two . . . or a combination of a task."  Tr. 69.  Considering the DOT definitions and the expert's testimony, substantial evidence supports the ALJ's conclusion that plaintiff could perform work that exists in significant numbers in the national economy and was not considered disabled.  Accordingly, plaintiff has not established an error in the ALJ's opinion regarding the vocational expert testimony.

**IT IS THEREFORE ORDERED** that Judgment of the Commissioner is **AFFIRMED.**

Dated this 11th day of July, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge